**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| POWER THE FUTURE, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 24-1942 (RC) |
| | : | | |
| v. | : | Re Document No.: | 5 |
| | : | | |
| WHITE HOUSE COUNCIL ON ENVIRONMENTAL QUALITY, | : : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I. INTRODUCTION**

Plaintiff Power the Future ("PTF" or "Plaintiff") brings this suit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to obtain all emails sent or received by Defendant White House Council on Environmental Quality ("CEQ," the "Agency," or "Defendant") Chief of Staff Matthew Lee-Ashley from June 30, 2021 to May 31, 2024. CEQ moves to dismiss the Complaint, or, in the alternative, seeks summary judgment, arguing that PTF's FOIA request is not reasonably described. For the reasons set forth below, the Court finds that Plaintiff's FOIA request is not reasonably described as required by the FOIA and grants Defendant's motion for summary judgment.

**II. FACTUAL AND PROCEDURAL BACKGROUND**

PTF is a "non-profit organization . . . dedicated to disseminating research, sharing facts and truths, engaging at the local level and interacting with the media, specifically relating to energy and environmental public policy." Compl. ¶ 4, ECF No. 1 (internal quotations omitted). On May 31, 2024, PTF submitted a FOIA request to CEQ, *id.* ¶ 9, an office within the Executive

Office of the President that "consults and coordinates with federal agencies . . . on the implementation of [the National Environmental Policy Act]" and "advises and assists the President on policies that promote the improvement of environmental quality."  *See Council on Environmental Quality*, The White House, https://perma.cc/W32C-A555.  In the FOIA request, PTF sought

> copies of all electronic mail a) sent to or from (whether as cc: or bcc:) Chief of Staff Matthew Lee-Ashley, b) dated at any time from June 30, 2021 through May 31, 2024, inclusive, that c) is also sent to, from or which copies any email address ending in @who.eop.gov, excluding calendar invitations.

Ex. A to Decl. of Howard C. Sun ("Sun Decl.") at 1, ECF No. 5-2 (emphasis omitted).  In addition to excluding calendar invitations, the request sought to exclude "correspondence that merely receives or forwards . . . newsletters, press releases, or press summaries" and "any duplicates" of each responsive record.  *Id.*  The purpose for this request is to "shed light on CEQ's involvement in the current administration's declared 'whole of government' approach to imposing a never enacted 'climate' agenda."  Compl. ¶ 10.

On June 4, 2024, CEQ confirmed receipt of PTF's FOIA request and assigned the request a number, FY2024-198.  *Id.* ¶ 13.  On July 3, 2024, PTF filed this lawsuit claiming that CEQ was in violation of FOIA because the Agency was required to provide a determination on the FOIA request by July 1, 2024.  *Id.* ¶¶ 19–21; 5 U.S.C. § 552(a)(6)(a).  At the time this lawsuit was filed, the June 4, 2024 communication was the only correspondence PTF had received from the Agency.  Compl. ¶ 15.  On July 11, 2024, the Agency emailed PTF with a determination that the FOIA request was "overly broad" and offered to work with PTF to narrow the scope of the request.  Ex. C to Sun Decl.  To this Court's knowledge, no other communication regarding the scope of the request has occurred between the parties.  Sun Decl. ¶ 11.

In the present suit, PTF seeks (1) a judgment declaring that it is entitled to the requested records and that CEQ's processing of the FOIA request is not in accordance with the law; (2) an injunction ordering CEQ to produce the requested records; and (3) payment of litigation costs and attorney fees.  *See* Compl. ¶¶ 22–33.  CEQ moves for dismissal under Rule 12(b)(6), or, in the alternative, for summary judgment, arguing that the FOIA request is not reasonably described and would impose an undue burden on the agency.  *See* Mot. Dismiss, Alternatively, Summ. J. & Supp. Mem. Thereof ("Def.'s Mot.") at 5–10, ECF No. 5.  PTF opposes the motion, maintaining that its FOIA request is reasonably described and that CEQ cannot claim undue burden as a substantive defense.  *See* Pl.'s Mem. L. Opp'n Mot. Dismiss & Alternative Mot. Summ. J. ("Pl.'s Opp'n") at 5–15, ECF No. 6.  The motion is now fully briefed and ripe for review.

### III.  LEGAL STANDARDS

#### A.  Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In FOIA cases, summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith."  *Aguiar v. Drug Enf't Admin.*, 865 F.3d 730, 734–35 (D.C. Cir. 2017) (internal quotation marks omitted) (quoting *Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013)); *see also Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) ("[A]n agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls

within the class requested either has been produced . . . or is wholly exempt from the Act's inspection requirements.'" (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978))).

### B. Freedom of Information Act

The FOIA requires federal agencies to "make . . . records promptly available to any person" who "reasonably describes such records" and makes the request "in accordance with published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A). A FOIA request reasonably describes agency records when it "would be sufficient [to] enable[] a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort." *Truitt v. Dep't of State*, 897 F.2d 540, 545 n.36 (D.C. Cir. 1990). "The linchpin inquiry is whether the agency is able to determine precisely what records are being requested.'" *Yeager v. Drug Enf't Admin.*, 678 F.2d 315, 326 (D.C. Cir. 1982) (internal quotation marks and citations omitted).

### IV. ANALYSIS

CEQ moves for dismissal under Rule 12(b)(6), or, in the alternative, for summary judgment under Rule 56. *See* Def.'s Mot at 1. CEQ argues that a Rule 12(b)(6) motion to dismiss is appropriate because PTF's request is not reasonably described on its face and is not procedurally compliant. *See* Reply Supp. Mot. Dismiss or Summ. J. ("Def.'s Reply") at 1–4, ECF No. 8. In the alternative, CEQ argues that summary judgment is appropriate because PTF's FOIA request would be unduly burdensome to process such that it fails to be reasonably described under 5 U.S.C. § 552(a)(3)(A). *See id.* at 4–7. Circuit precedent establishes that an agency is not required to comply with a request for which its post-search efforts would "impose an unreasonable burden." *Am. Fed'n of Gov't Emps., Local 2782 v. U.S. Dep't of Com.* ("*AFGE II*"), 907 F.2d 203, 209 (D.C. Cir. 1990). While the parties make arguments addressing both

4

motions, the Court ultimately finds there is no genuine dispute of material fact and that PTF's request would create an unreasonable burden on the Agency; thus, summary judgment for the Agency is appropriate. Because the Court relies on information outside of the pleadings in coming to its conclusion, the Court analyzes this motion under the summary judgment standard. *See Colbert v. Potter*, 471 F.3d 158, 164 (D.C. Cir. 2006); *see also Ctr. for Immigr. Stud. v. U.S. Citizenship & Immigr. Servs.*, 628 F. Supp. 3d 266, 275 (D.D.C. 2022) ("Because the . . . requests require an unduly burdensome post-search effort, the Court will grant the agency's motion for summary judgment.").

### A. Reasonably Describes Requirement

The Circuit has identified three ways in which a request fails the "reasonably describes" requirement of the FOIA. *See Cntr. for Immigr. Stud.*, 628 F. Supp. 3d at 271–72; 5 U.S.C. § 552(a)(3)(A). First, a request that does not allow the agency "to determine precisely what records are being requested" will not suffice. *Yeager*, 678 F.2d at 326 (internal quotation marks, alterations, and citations omitted). Second, a request that would require "an unreasonably burdensome search" is not reasonably described. *Goland*, 607 F.2d at 353. And third, even if an agency is able to sufficiently identify the requested records, an agency is not required to process a request for which its post-search efforts would "impose an unreasonable burden." *AFGE II*, 907 F.3d at 209. Because this Court finds the third reason to be dispositive, the Court will only address arguments on whether the request's post-search efforts would impose an unreasonable burden on the Agency.

#### 1. Unreasonable Burden

CEQ argues that the disputed request is invalid "because of the undue burden that it would impose on the agency." Def.'s Mot. at 9. PTF opposes the motion, arguing that there is

5

no defense for undue burden under FOIA, and even if such a defense existed, the Agency's estimates are inaccurate because the Agency overestimates the number of responsive records. *See* Pl.'s Opp'n at 14–15.  Neither of PTF's arguments are persuasive.

The Court begins with PTF's unsupported assertion that "the mere fact that records are voluminous is not a defense under FOIA." *Id.*  The D.C. Circuit established in *AFGE II* that while a request "might identify the documents requested with sufficient precision to enable the agency to identify them," a request can still be "so broad as to impose an unreasonable burden upon the agency." 907 F.3d at 209.  The Circuit's rule focuses on the burdensomeness of the post-search efforts, such as "locat[ing], review[ing], redact[ing], and arrang[ing] for inspection." *Id.*  Regardless of whether this holding is couched as a requirement or defense, "it is the requester's responsibility to frame requests with sufficient particularity to ensure that searches are not unreasonably burdensome." *Assassination Archives & Rsch. Ctr., Inc. v. CIA*, 720 F. Supp. 217, 219 (D.D.C. 1989), *aff'd*, No. 89-cv-5414, 1990 WL 123924 (D.C. Cir. Aug. 13, 1990) (citing *Yeager*, 678 F.2d 315).  Thus, PTF's assertion that there is no defense for undue burden under FOIA contradicts Circuit precedent, and this Court must follow the binding Circuit rule that a request for which its post-search efforts create an "unreasonable burden" fails the "reasonably described" requirement of 5 U.S.C. § 552(a)(3)(A).  *See AFGE II*, 907 F.3d at 209.

Moving to PTF's next argument, PTF asserts that the Agency's estimates are inaccurate because they overestimate the number of responsive records by not appropriately searching for the records.  *See* Pl.'s Opp'n at 15.  PTF provides a declaration from Christopher Horner, counsel for PTF, to support this argument.  Decl. of Christopher Horner ("Horner Decl.") ¶ 2, ECF No. 6-1.  In his declaration, Horner states that "in [his] experience . . . federal agencies responding to FOIA requests do overstate, sometimes dramatically so, the number of potentially

6

responsive records subject to processing." *Id.* ¶ 7.  Further, Horner states that it is "unlikely that hundreds of thousands of records [are] responsive" because the agency failed to "deduplicate records," "exclude calendar invitations," and "remove news articles or non-substantive 'forwards." *Id.* ¶ 9 (internal quotation marks omitted).

The Agency provides a declaration from Howard Sun, who works in the Office of General Counsel at CEQ, that provides insight as to how it calculated its estimates.  *See* Sun Decl. ¶ 1.  In his declaration, Sun explains that "[a]lthough the FOIA request identified certain limited categories of items that CEQ could treat as outside the scope of the request . . . CEQ still would need to review the records closely . . . .  Consequently, those limited exceptions [provided by PTF] do not reduce the burden of the request."  Sun Decl. ¶ 13 n.1.  Even though the Agency can automatically screen out exact duplicates, it would still have to perform a manual review of all records to determine which records can be excluded or are not responsive.  *See id.*

In the FOIA context, affidavits submitted by an agency "enjoy a presumption of good faith."  *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).  This extends to declarations and affidavits laying out "good faith estimate[s] of the excessive amount of time required to" respond to a FOIA request.  *Pinson v. U.S. Dep't of Just.*, 80 F. Supp. 3d 211, 216 (D.D.C. 2015).  "Purely speculative claims" are insufficient to rebut the presumption of good faith awarded to agencies.  *Ground Saucer Watch*, 692 F.2d at 771 (citation omitted).

In evaluating the competing declarations, the Court grants Sun's declaration the presumption of good faith awarded to declarations submitted by agencies.  *See Ground Saucer Watch*, 692 F.2d at 771; *Pinson*, 80 F. Supp. 3d at 216.  In contrast, Horner's declaration makes "purely speculative claims" based solely on its own counsel's prior FOIA experience in other cases involving different declarants at different agencies.  *See* Horner Decl. ¶ 9; *Ground Saucer*

7

*Watch*, 692 F.2d at 771 (citation omitted). Horner does not provide any reason specific to the request at issue as to why the post-search burden would be less than stated in Sun's declaration. *See id.* Focusing on the numbers provided in Sun's declaration, Horner suggests that the true number of responsive records is significantly less than the Agency's estimate. *See id.* But this speculative conclusion misses the purpose of the Circuit's ruling in *AFGE II*. As the Agency describes in its declaration, to find the true number of responsive records, the Agency would have to perform a manual review of all records to determine which records fit into one of the limited exceptions provided by PTF. *See* Sun Decl. ¶ 13 n.1. And as the Circuit explained in *AFGE II*, the unreasonable burden requirement focuses on the burdensomeness of the post-search efforts. *See AFGE II*, 907 F.3d at 209. Because Horner's declaration makes "purely speculative claims" unrelated to the key purpose of this Circuit's unreasonable burden holding, the Court awards Sun's declaration a presumption of good faith in accordance with Circuit precedent. *See Ground Saucer Watch*, 692 F.2d at 771 (citation omitted); *AFGE II*, 907 F.3d at 209.

Moving to the Agency's arguments in support of its motion, CEQ estimates that the initial processing of PTF's request would require 21,870 hours, or 911 workdays, if all current FOIA Specialists employed by the Agency processed the request full-time. Sun Decl. ¶ 18. The initial processing "would consume virtually all the time of the [Agency's] limited FOIA staff for over a three-year period." Def.'s Mot. at 9; Sun Decl. ¶ 18–20. This estimate falls well above what other courts in this district have found to be unreasonably burdensome. *See, e.g.*, *Wolf v. CIA*, 569 F. Supp. 2d 1, 9 (D.D.C. 2008) (finding 3,675 hours as unreasonable); *Ctr. for Immigr. Stud.*, 628 F. Supp. 3d at 272–73 (finding 8,151 hours as unreasonable); *Ayuda, Inc. v. Fed. Trade Comm'n*, 70 F. Supp. 3d 247, 275–76 (D.D.C. 2014) (finding 8,000 hours as

unreasonable). Even if the Court were to apply the reduced responsiveness rate described in Horner's attached declaration, a 78% reduction in the amount of records the Agency would need to process would still require about 4,800 hours, significantly greater than the number of hours deemed unreasonable in *Wolf*. *See* 569 F. Supp. 2d at 9.[1]

But "burdensomeness does not boil down to a simple game of numbers," *Ctr. for Immigr. Stud.*, 628 F. Supp. 3d at 273, and "sheer volume of responsive pages is not the only issue," *Feds for Freedom v. U.S. Dep't of Def.*, No. 23-cv-3607, 2025 WL 522017, at *3 (D.D.C. Feb. 18, 2025). The Agency relies on *AFGE II* to illustrate that PTF's request is unreasonably burdensome. *See* Def.'s Mot. at 10. In *AFGE II*, a labor union submitted broadly worded FOIA requests seeking documents about the Census Bureau's promotion policies, requiring inspection of "every chronological office file and correspondence file, internal and external, for every branch office, staff office, etc." 907 F.2d at 205, 208–09 (alterations omitted). According to the Circuit, such requests, which "might identify the documents requested with sufficient precision to enable the agency to identify them," still did not "reasonably describe[] a class of documents subject to disclosure" because they were "so broad as to impose an unreasonable burden upon the agency." *Id.* at 209 (internal quotation marks and citation omitted). The Circuit's main reason for reaching this conclusion was that responding to the request would be quite costly as it "would require the agency to locate, review, redact, and arrange for inspection a vast quantity of material." *AFGE II*, 907 F.2d at 209.

---

[1] In his declaration, Horner cites four examples "of a federal agency dramatically overstating the volume of potentially responsive records." *See* Horner Decl. ¶ 8. Only one of the examples was from a case in this district, which is why this Court elects to use 78% for illustrative purposes. *See id.* (referring to *Gov't Accountability & Oversight v. U.S. Ctrs. for Medicare & Medicaid Servs.*, No. 23-cv-1712 (D.D.C. filed June 13, 2023)).

Like the requests in *AFGE II*, PTF's request seeks similarly broad categories of records. While CEQ might be able to identify the documents requested, *see* Sun Decl. ¶ 13, the request is still so broad as to impose an unreasonable burden on the Agency. *See AFGE II*, 907 F.2d at 209. Like the requests in *AFGE II*, PTF submitted a blanket request for "all electronic mail" sent to or from a high-ranking officer in the Agency without any restriction on subject matter. Ex. A to Sun Decl. at 1. Chief of Staff Matthew Lee-Ashley's high-level position within the Agency would likely implicate numerous FOIA exemptions and require time-consuming internal review and consultation with the White House Counsel's Office. *See* Sun Decl. ¶ 20. Because of the nature of Chief of Staff Matthew Lee-Ashley's position, the Agency's post-search efforts become even more burdensome. *See Ctr. for Immigr. Stud.*, 628 F. Supp. 3d at 273 ("Taking [the high positions of the three officials] into account, the agency's current estimates likely understate the time needed to produce all records.").

The Court concludes that PTF's request would require the Agency to undertake unreasonably burdensome post-search efforts. *See AFGE II*, 907 F.2d at 209. Thus, the request is not "reasonably described" as required by 5 U.S.C. § 552(a)(3)(A), and the Agency has no responsibility to further process the request. *See id.* The Court therefore grants Defendant's motion for summary judgment.[2]

---

[2] Plaintiff has not requested discovery in order to oppose the present motion for summary judgment. *See* Fed. R. Civ. P. 56(d). Accordingly, this Court finds no reason to depart from the general rule that "summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Aguiar*, 865 F.3d at 734–35 (internal quotation marks and citation omitted).

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 5) is **GRANTED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  August 4, 2025                                                                  RUDOLPH CONTRERAS
                                                                                                         United States District Judge